# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8260 | **DATE** | 12/18/2002 |
| **CASE TITLE** | Thompson vs. Doctors & Merchants Credit Service | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's Motion for Class Certification, pursuant to Fed. R. Civ. P. 23(b)(3) [#11] is hereby granted. AK

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANGELA THOMPSON,                )
                                )
            Plaintiff,          ) No. 01 C 8260
                                )
       v.                       ) Magistrate Judge
                                ) Arlander Keys
DOCTORS & MERCHANTS             )
CREDIT SERVICE, INC.,           )
                                )
            Defendant.          )

**DOCKETED**
**DEC 1 9 2002**

### MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff Angela Thompson's Motion for Class Certification, pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiff sued Doctors & Merchants Credit Service, Inc. ("Doctors") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (West 2002)("FDCPA"), and the Fair Credit Reporting Act, 15 U.S.C. §1681 (West 2002). For the reasons set forth below, the Motion is granted.

### BACKGROUND FACTS

Plaintiff Angela Thompson resides in Gary, Indiana. In 1996, Plaintiff purchased jewelry, for her personal use, from Albert's Jewelers ("Albert's"), an Indiana merchant[1]. Plaintiff financed the transaction through Albert's, and had an account balance of $450.03. At some time prior to November 1997, Albert's turned Plaintiff's account over for collection to

---

[1] Albert's is located in East Chicago, Indiana.



Doctors, which sent Plaintiff a form collection letter in November of 1997.

On approximately January 30, 1998, Plaintiff remitted payment directly to Albert's, satisfying her entire debt. Nevertheless, on September 19, 2000, Doctors mailed Plaintiff a letter, demanding payment of $225.02. Less than one month later, Doctors mailed Plaintiff a letter stating that "We have received a new inquiry about your credit rating, and we would like to help you with your account." In a letter dated November 6, 2000, Plaintiff explained to Doctors that she had paid Albert's the $450.03 directly, and attached to the letter proof that she had satisfied the debt. Doctors persisted, and sent Plaintiff a letter dated January 26, 2001, demanding payment of $225.02.

At some time between January 30, 1998 and January 31, 2001, Doctors reported to the TransUnion credit reporting agency that Plaintiff continued to owe $225.02 on the Albert's account. When Plaintiff discovered the error on her credit report on approximately January 31, 2001, she contacted TransUnion. Shortly thereafter, TransUnion contacted Doctors and requested that Doctors investigate the validity of the debt. In February, 2001, Doctors confirmed that Plaintiff continued to owe $225.02 on the Albert's account.

Plaintiff requested that Doctors "stop harassing" her for a debt that had already been paid. Doctors responded to

Plaintiff on February 28, 2001, claiming that Doctors had "received new inquiry about your credit rating, and we would like to help you with your account."

## PROCEDURAL HISTORY

On October 26, 2001, Plaintiff filed suit against Doctors, pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 (West 2002), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(West 2002). Doctors answered Plaintiff's Complaint, and asserted two affirmative defenses. Plaintiff moved to strike Doctors' second affirmative defense on March 8, 2002[2].

On April 25, 2002, Plaintiff filed a Motion for Class Certification. Plaintiff seeks certification of two classes, each consisting of Indiana residents from whom Doctors attempted to collect a contingent collection fee, stemming from a transaction with an Indiana merchant (the "Indiana debtors"). The first class is limited to Indiana debtors from whom Doctors (allegedly) attempted to collect the alleged wrongful fee in the one year preceding the filing of Plaintiff's suit (on or after October 26, 2000), and seeks to recover damages under the FDCPA. The second class includes Indiana debtors from whom Doctors attempted to collect the alleged wrongful fee in the five years preceding the filing of this action, and those Indiana debtors who still have outstanding debts, according to Doctors' records.

---

[2] This Motion is the subject of a separate Order.

This second class seeks to obtain equitable relief against Doctors.

**DISCUSSION**

In evaluating a motion for class certification, the Court accepts Plaintiff's allegations in support of her motion as true. *Clark v. Retrieval Masters Creditors Bureau*, 185 F.R.D. 247, 248 (N.D. Ill. 1999)(noting that courts do not examine the merits of a case in determining whether certification is warranted.) Class certification may be granted where each of the four prerequisites for certification under Rule 23(a) is met, and the appropriateness of a class action under one of the three provisions under Rule 23(b) is demonstrated. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 2369 (1982). In this case, Plaintiff seeks certification under Rule 23(b)(3).

Pursuant to Rule 23(a), Plaintiff bears the burden of demonstrating that: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to all class members; 3) the class representatives' claims and defenses are typical of the class members' claims and defenses; and 4) the class representatives will adequately advance the class members' interests. Fed. R. Civ. P. 23(a). Pursuant to Rule 23(b)(3), Plaintiff alleges that class certification is warranted because common questions of law and fact predominate

over individual issues, and that a class action is superior to other available methods of adjudicating the controversy.

Doctors challenges Plaintiff's ability to satisfy three of Rule 23(a)'s four prerequisites, conceding only that Plaintiff and Plaintiff's counsel could adequately represent the putative class. Doctors also contends that Plaintiff has not demonstrated the appropriateness of a class action under Rule 23(b)(3). The Court will address each contention in turn.

I. **Rule 23(a)**

A. **Numerosity**

To satisfy Rule 23(a)'s numerosity requirement, Plaintiff bears the burden of demonstrating that joinder of all class members is impracticable. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993)(the plaintiff's failure to satisfy any one of Rule 23's requirements precludes certification); *Gomez v. Illinois State Board of Education*, 117 F.R.D. 394, 396 (N.D. Ill. 1987). Typically, joinder is considered to be impracticable when the proposed class numbers at least 40. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992). Although Plaintiff may provide an estimate as to the number of class members, conclusory allegations regarding class size are not sufficient. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (ruling that plaintiffs cannot merely speculate as to class size). The Court is permitted, however, to

make "common-sense assumptions that support a finding of numerosity." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996).

Defendant claims that Plaintiff fails to satisfy her burden of demonstrating numerosity, because Plaintiff makes only conclusory allegations that joinder is impracticable, and that Plaintiff merely speculates as to class size. Plaintiff replies that even Doctors concedes that, in the one year preceding the filing of her lawsuit, Doctors attempted to collect more than 100 accounts on Albert's behalf. *See* Def.'s Response to Pl.'s Second Discovery Requests. In addition, Plaintiff has attached the deposition of Maria Ward, the manager of Albert's credit department, in which she testified that Doctors is currently collecting approximately 500 to 1,000 outstanding accounts on Albert's behalf. *See* Ward Dep. at pp. 10, 28. Ms. Ward further explained that Albert's adds a collection fee to each of the collection accounts that it refers to Doctors, that the collection fee equals 50% of the outstanding debt, and that the printed debtor's history report, which Albert's forwards to Doctors along with the collection request, expressly identifies this collection fee[3].

---

[3] Plaintiff further argues that Albert's is only one of many Indiana creditors for whom DMCS performs collection services, and that the Court should, therefore, presume an even higher number of class members. However, Plaintiff has not cited to any evidence in support of this assertion.

Although this information does not specify an exact number of potential class members, Rule 23(a) does not require such a showing. *See, In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 323 (E.D.N.Y. 1982)(a class action may proceed upon estimates as to the size of the proposed class). For purposes of this Motion, it is sufficient that Plaintiff has demonstrated that Doctors has attempted to collect the allegedly unlawful fee from over 40 Indiana consumers in the past year, and well in excess of 500 Indiana consumers in the past five years.[4] Therefore, the Court finds that joinder is impracticable with respect to both classes, and that the numerosity requirement is met. *See Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996) (noting that "[j]udicial economy plainly would be served by allowing the consolidation of 159 potential lawsuits into one action. Furthermore, because the individual claims in this case are relatively small, individual class members may be hesitant to sue.")

### B. Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to all class members. "A common nucleus of operative

---

[4] Plaintiff's evidence does not conclusively demonstrate that these debtors were all Indiana consumers. However, given the fact that Albert's Jewelers is an Indiana merchant, without a national presence, it is reasonable for the Court to assume that at least one half of those debtors are Indiana consumers.

fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992); *Whitten v. ARS Nat'l Serv. Inc.,* No. 00 C 6080, 2001 WL 1143238, at *4 (N.D. Ill. 2001) ("'[T]he commonality requirement has been characterized as a 'low hurdle' easily surmounted.'"). This requirement is typically met where a defendant has allegedly engaged in standardized conduct toward the members of the proposed class. *Chandler v. Southwest Jeep Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D. Ill. 1995). Some factual variations among the class members' grievances, standing alone, will not defeat certification. *Patterson v. General Motors Corp.,* 631 F.2d 476 (7th Cir. 1980).

Plaintiff contends that Doctors charged a 50% contingency fee to the accounts of all of the debtors that were referred to it for collection by Albert's. *See* Ward Dep. at pp. 10-12 (testifying that Albert's adds a 50% collection fee to all accounts sent out to collection agencies, such as Doctors). Plaintiff asserts that the common issue of law is whether Doctors' attempts to recover this 50% collection fee, in addition to the debt itself, was illegal, and that this question predominates over all other issues.

In arguing that commonality does not exist, Doctors notes that Plaintiff's credit agreement with Albert's authorized the imposition of Doctors' collection fees. Doctors claims that its

attempt to collect the $225.02 (50% of Plaintiff's debt) was appropriate, because Plaintiff agreed to "pay all reasonable costs of collecting amounts due" in the event of default. *See* Def.'s Resp. to Motion. For Cert., Ex. D (Albert's Revolving Charge Account Security Agreement.) Doctors apparently concedes that, absent such prior authorization, the fee would be inappropriate. As such, Doctors argues, determining whether commonality exists would require the Court to examine hundreds of debtor contracts to determine whether the debtor had agreed to the collection fee.

Doctors' argument presumes, however, that its 50% collection fee is permissible if the debtor signed the Albert's Security Agreement, which authorized the collection of "reasonable costs" in the event of default. This is not necessarily the case, however. Indiana law appears to limit acceptable credit-related charges to delinquency charges, reasonable attorney's fees, and expenses arising from realizing on collateral under the Uniform Commercial Code (which is not implicated in the instant case.) *See* In. Code §24-4.5-2-414 (Commentary) (West 2002). A $225.02 collection fee, representing 50% of the outstanding debt, does not appear to fall within the definition of any of these three permissible credit-related charges.

The collection fee in this case does not fall within the scope of permissible "delinquency charges" under Indiana law.

9

Indiana law expressly limits delinquency charges to $5.00, in most instances. In. Code § 24-4.5-2-203 (West 2002)[5]. With the exception of the most inexpensive purchases, Doctors' fee appears to exceed the limit for permissible delinquency charges.

While Indiana law permits creditors to charge debtors for reasonable attorneys' fees, Doctors is a collection agency, not a law firm. In. Code § 24-4.5-2-413. Even if Doctors were a licensed law firm, the fee would arguably be excessive under Indiana law. Indiana courts have found that, in general, a contingency fee rarely reflects the attorney's "reasonable" rate, and requires that the client expressly agree to the contingency fee. *See, e.g., Leibowitz v. Moore*, 477 N.E.2d 946, 947 (Ind. App. 1985); *Waxman Indust. Inc. v. Trustco Development Co.*, 455 N.E. 2d 376, 381("a contingent fee can never be implied, but it must be a matter expressly contracted for between the attorney and his client.") Therefore, a contingency collection fee, which was not expressly provided for in the contract, arguably would not be permissible under Indiana law.

---

[5] Section 24-4.5-2-203.5 of the Indiana Code further provides that, in the event that a debtor fails to make two full installment payments, a creditor may elect to convert a precomputed consumer credit sale to a consumer credit sale in which the charge is based on unpaid balances. However, this provision does not apply to revolving charge accounts, like the account at issue in the instant case. But even when § 2-201 applies, the Indiana Code limits the collection fee to 21% of the unpaid balance, where the balance is more than $300 and less than $1,000. In. Code § 24-4.5-2-201 (West 2002).

10

Given that Indiana law does not appear to authorize a collection agency to collect a 50% contingency fee, even where the debtor has previously agreed to pay reasonable expenses in the event of default, Doctors' argument that a class action will necessitate the review of hundreds of individual contracts is not persuasive. An agreement contrary to Indiana law is unenforceable; therefore, accepting Plaintiff's argument as true, debtors who signed the Albert's Security Agreement stand in the same shoes as those debtors who did not sign such an agreement. *See Valparaiso Tech. Instit., Inc. v. Porter County Treasurer*, 676 N.E. 2d 416, 420 (Ind. App. 1997) ("contracting parties may enter into any agreement they desire so long as it is not illegal or contrary to public policy.") As such, Doctors' attempted collection of the fee[6] arguably would have violated Indiana law, and the FDCPA[7], regardless of what the relevant contracts provide. Because Doctors has allegedly engaged in standardized conduct toward the members of the proposed class, the Court finds that Rule 23(a)'s commonality requirement is satisfied.

### C. Typicality

---

[6] Doctors does not argue that its liability should hinge upon its success in collecting this fee.

[7] The FDCPA generally prohibits the use of debt collection practices that violate state law. *See, Picht v. Hawks, Ltd.*, 236 F.3d 446, 448 (8th Cir. 2001).

11

A Plaintiff satisfies Rule 23(a)'s typicality requirement if her claims and defenses are "typical . . . of the class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *Id.* at 595 (although related to the commonality inquiry, typicality focuses upon the class representative.) Courts liberally construe the typicality requirement, and do not require a named plaintiff to demonstrate that her claim is identical to all class members' claims. *Gaspar v. Linvatec Corp.* 167 F.R.D. 51, 57 (N.D. Ill. 1996).

In challenging Plaintiff's ability to satisfy typicality, Doctors simply rehashes its commonality argument. Doctors argues that, because its liability turns on the contents of the underlying credit agreements, and because Plaintiff has not demonstrated that all debtors agreed in writing to the imposition of a collection fee, it is impossible to determine whether Plaintiff's claims are typical of the potential class members' claims.

As the Court has stated above, however, this is a distinction without a difference; under Indiana law, Doctors' liability does not appear to be contingent upon whether the debtors authorized the collection charge. Plaintiff claims that

12

Doctors is liable under the FDCPA in both instances. The existence of numerous creditor contracts does not render Plaintiff's claims atypical. To the contrary, the Court finds that Plaintiff's claims are typical of the class members' claims, as they all arise from Doctors' alleged practice of attempting to collect an allegedly impermissible contingency free from Indiana consumers. Therefore, Plaintiff has satisfied Rule 23(a)'s typicality requirement.

Doctors has not challenged the ability of Plaintiff and her counsel to satisfy Rule 23(a)(4), which requires that a class action representative adequately and fairly protect the interests of the class members. Therefore, the Court concludes that Plaintiff has satisfied all of Rule 23(a)'s requirements.

## II. Rule 23(b)(3)

In addition to satisfying Rule 23(a)'s requirements, Plaintiff must establish that a class action is appropriate under Rule 23(b). Rule 23(b) identifies three types of permissible federal class actions. Plaintiff has opted to proceed under Rule 23(b)(3), which requires her to establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). In evaluating whether Plaintiff has made such a

showing, the Court may also consider 1) the class members' interest in individually controlling separate actions; 2) the existence of previously-commenced litigation relating to the present suit; 3) the desirability of the selected forum; and 4) class manageability. *Id.*

The commonality requirement of Rule 23(a)(2) is substantially similar to the predominance requirement of Rule 23(b)(3); a finding of one generally will satisfy the other. *Villareal v. Snow*, No. 95 C 2484, 1996 WL 28254, at *5 (N.D. Ill. Jan. 19, 1996). It is not surprising, then, that Doctors would raise the same challenge to Plaintiff's ability to establish predominance under Rule 23(b)(3). Doctors once again stresses that individual issues, ie., the specific terms of each debtors' credit agreement, predominate over the common question. As stated above, however, this argument is without merit.

The bulk of Doctors' Rule 23(b)(3) argument focuses upon the Rule's second element; the superiority and efficiency of the class action as a vehicle for resolving the present controversy. Doctors contends that a class action is not a superior method for adjudicating this controversy because the monetary recovery to the putative class would be de minimis. In support of this contention, Doctors has submitted a balance sheet showing that it presently has a negative net worth.

Initially, Plaintiff challenges Doctors' assessment of the

potential damages as de minimis[8]. Class members who paid the allegedly impermissible fee may get money damages equal to the fee (which is, presumably, 50% of the debt they had difficulty paying in the first place.) Plaintiff correctly notes that actual damages are not subject to the 1% cap in 15 U.S.C. § 1692k.

Even if the potential damages were de minimis, the Seventh Circuit has held that a "de minimis recovery (in monetary terms) should not automatically bar a class action." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Instead, the Court must consider the appropriateness of the class action method of resolution in light of a potentially nominal recovery.

In so doing, the Court notes that the FDCPA expressly provides that class actions are efficient and fair methods for adjudicating consumer protection claims. *See* 15 U.S.C. § 1692k(a) and (b). To accept Doctors' position, would require the Court to ignore the fact that a class action is appropriate in cases such as this, where the amount of damages is likely too low to make individual lawsuits feasible. *Krause v. GE Capital Mortgage Serv., Inc.*, No. 97 C 8589, 1998 WL 831896, at *6 (N.D. Ill. Nov. 20, 1998).

The Seventh Circuit has stated:

---

[8] Plaintiff also claims that Doctors' balance sheet is unauthenticated, unaudited, and utilizes creative accounting to establish a negative net worth.

> True, the FDCPA allows for individual recoveries of up to
> $1,000. But this assumes that the plaintiff will be aware
> of her rights, willing to subject herself to all the burdens
> of suing and able to find an attorney willing to take her
> case. These are considerations that cannot be dismissed
> lightly in assessing whether a class action or a series of
> individual lawsuits would be more appropriate for pursuing
> the FDCPA's objectives.

*Mace*, 109 F.3d at 344.

The Court finds that a class action is the best method for adjudicating these claims, which might not otherwise be brought by individual aggrieved debtors. Indeed, a class action would likely aggregate "the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* Moreover, there is no evidence that other class members' interests in individually controlling separate actions; the existence of previously-commenced litigation relating to the present suit; or the desirability of another forum warrant denying Plaintiff's Motion. Because judicial economy would be served by consolidating the claims of numerous debtors, and because so many debtors might not otherwise have the opportunity to achieve vindication in a court of law, the Court finds that Plaintiff has satisfied Rule 23(b)(3). *See Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996).

## CONCLUSION

Because Plaintiff has satisfied the requirements of Rule 23(a) and 23(b)(3), certification of the proposed classes is warranted.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Class Certification be, and the same hereby is, GRANTED.

DATED: December 18, 2002          ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge